182751. Mr. Dressel. Thank you, Your Honor. Good morning, Your Honors. Thank you, Joshua. Great job. We plead for Mr. Choudhry. The District Court abused its discretion in denying Mr. Choudhry's Rule 33 motion by misapplying a couple of important legal principles. There are two newly discovered evidence in the Rule 33 motion. One is the information that was disclosed in the fall 2014 trial in Pakistan, which was obviously after the verdict in the case here in the Eastern District, and the other was from the affidavit from Ahna Ajmal, an important government witness, also the daughter of the defendant, of Mr. Choudhry. The issues that were wrongly applied, one was that the court found that the evidence was not newly discovered and held that trial counsel could have exercised due diligence or did not exercise due diligence, but this court has distinguished between legal reasons and what the court called in Forbes matters of circumstance. So, for example, in Forbes, the defense knew that the court hypothesized in Forbes that if a counsel knew that witness X had information but didn't know who witness X was, that if they found that after trial, that would be a matter of circumstance and not a failure to exercise due diligence, not a legal reason like a Fifth Amendment indication or something like that. Also, the mere existence of the evidence does not require that the counsel to know it. The court has said undertook sufficient diligence, that's an O-win and D-matina, without unusual effort, and in whims, the court said it's not maximum feasible diligence, and I think that's the case. The witnesses were in Pakistan. The trial hadn't occurred yet. The south side location information certainly was not available to the defense at that time. They couldn't have gotten it. The Amina Ajmal Atta David, there was no defense access to her before even with her request, and she did not even know of the lying that had occurred from the other witnesses until she read the trial transcript afterwards. Also, another application that was written by the court is this was not cumulative. There was a circumstantial case on the Homs side. The Pakistani witnesses were authentic alibi witnesses, saying that each of the people who was allegedly involved in the murder was not present and was actually somewhere else at the time as opposed to witnesses who said, I didn't see them there. That's not really an alibi witness. An alibi witness says this person was somewhere. The CFLI evidence had a very important witness, Amina's husband, 400 miles away. So these are not cumulative. Also, it didn't just merely impeach prosecution witnesses. It was substantive evidence in favor of the defendant. Also, the evidence was material. It's not a sufficiency theft under Rule 33. It's not merely impeachment. Amina's information went directly to the heart of the government's case, which was where the witnesses were at the time that the murders occurred, whether they could have seen what occurred. The CFLI evidence, again, material, indisputable evidence that would put Babar, a key person both government witnesses, put at the scene of the crime, would have put him 400 miles away at the time that it occurred. I'll continue if the court doesn't have questions. I have a question before I tell. This is Judge Bianco. You said those witnesses were at the heart of the government's case, but we could go through each thing and try to discuss whether it was newly discovered or not newly discovered. But to me, the bottom line question is, even if it's newly discovered evidence, the heart of the government's case was not those two witnesses who were undermined, I think, significantly by the defense witnesses who were called. The heart of the government's case was a recording four days before the murder where your client said to his daughter, if you don't come back, I will kill each and every one of them. I will go to jail. The entire family will go to jail. And then on the night of the murder, he leaves his job as a taxi cab driver early. There's 39 calls between the time he leaves his job and a few hours later when the murder happens with people in Pakistan. And then just immediately after the murders, he talks to his daughter again and on a recording says, I will not leave a single member of their family alive. She says, what we do after another 24 hours, he says, something else will happen or another person will be gone. That was the heart of the government's case. And I don't see how any of this additional evidence impacts any of that core evidence. How a jury, this is a very high standard, would it probably result in an acquittal? So even if all this other information was put before the jury, what would be the explanation for those recordings? Well, those recordings were threats. And with respect to the 875 counts, that's a different issue. But with respect to the homicide counts, the 956 counts, those were threats made over a period of time. And Amina said that she really didn't fear her father as much as she felt or she feared her relatives in Pakistan. Also, obviously, the government didn't think that these were the kind of threats that required action because the government is recording them as they occur. So the government didn't go and tell the family, we have to hide you somewhere, tell the authorities in Pakistan, we have to hide you because there's a legitimate threat against your life. This was a father who was very upset because his daughter ran away with someone and left a marriage that had been arranged. And he was at his wit's end in trying to get his daughter back and was making, the argument was that he was making idle threats to do so, maybe over a period of time. Some of the evidence that was disclosed later, which was the fact that Amina's knowledge of conversations with respect to other reasons why Ashtar would have been killed by other people to whom he owed money and to whom he had problems with, would have created a different path for the defense to argue and for the jury to decide You think the jury would have concluded that it was a coincidence that he said, I will kill them four days before the murder and then somebody else happened to kill them four days later? That's what you think the jury would conclude? Well, I think that given all of this evidence, including the fact that the people who, the two witnesses for the government said over there were not there and were in various other different places with alibi witnesses for each of them, I think that could have created a reasonable doubt for the jury. And then the result could have been different. Yes, I think that that's why the jury would take all of it. Go ahead, Your Honor. I'm sorry. I was just going to ask, was there any explanation at trial for why he made 39 calls to Pakistan between 10 p.m. and 4 a.m. immediately before the murder? Where were all those calls about? A lot of them were very short calls, and so voicemails or not getting through its potential. There wasn't any content related to those calls. Also, some of them were after the homicide. So I think that the fact that his family had been implicated by these witnesses to the authorities in Pakistan was something that would have been a subject of a lot of calls after the homicide. This is Judge Loyer. Was there not also a post-arrest admission that his brother was at the scene of the murders? Yes, there was. Obviously, that is... That's a problematic piece of evidence. Mr. Chowdhury's English is not the greatest. That I will tell you. But the jury was able to assess that, presumably, at some level. Through whatever phone calls they would... I think a lot of the phone calls were not in English, so I think that they would not have been able to figure out just how fragmented his English can be. Okay. So we will hear from the government, and you've reserved two minutes for rebuttal, Mr. Drittel. Thank you very much. Thank you. Good morning, Your Honours. This is Margaret Gandy for the United States. The district court did not abuse its discretion when it denied the defendant's motion for a new trial based on what the defendant purported was newly discovered evidence. As the record makes clear, the defendant was convicted at trial by a jury based on, among other things, the defendant's own warnings to his daughters several days before the murders that, if you don't come back, I will kill each and every one of them. I will go to jail. She did not come back, and the evidence at trial proved that he did, in fact, participate by conspiring with relatives in Pakistan to execute the father and sister of the man who helped his daughter escape Pakistan. This court affirmed that conviction, finding no merit to the defendant's claims that there was insufficient evidence to support that verdict, and that happened in 2016. And more recently, when the defendant's motion went before the district court for seeking a new trial, he described the government's proof the trial is overwhelming. Now, to be sure, it was circumstantial, but that also involved, as Your Honour pointed out earlier, direct statements, substantive statements from the defendant about his future intent, as well as his admission that he had issued threats and that his brother had been present. At the scene of the murder, may have been present at the scene of the murder. Given that backdrop, the purported newly discovered evidence upon which the defendant's motion relied would have to have been extraordinary to convince the district court that a serious question really existed about whether an innocent person had been convicted. The evidence proposed by counsel and upon which his motion relies is not of that quality. Now, some of the evidence can be argued as not newly discovered, and certainly we do so in our papers. The evidence I'll focus on for purposes of my three-minute argument is the Pakistani court documents and the cell site evidence provided by counsel. I'd like to note first that with respect to the Report Zimini, which is the Pakistani document that summarizes statements by various witnesses, I think there's a real question about whether it's newly discovered in the sense, obviously the document itself did not exist at the time of trial, but the testimony outlined in that document certainly was from witnesses who could arguably have been accessed by the defense and in certain instances, in fact, were accessed by the defense. Counsel concedes in his papers that three of the individuals had provided affidavits to the defense and were known to the defense as early as the time of the defendant's bail argument, so well before trial, and presumably could have been accessed again in order to testify. It's significant in this case, despite the challenges of the murder itself happening in Pakistan, the government and defense counsel worked together to make significant efforts to prevent, or excuse me, to allow the defense to present the case that they wanted to present. We worked with the State Department to allow three witnesses to be brought to the United States on temporary visas, and they were brought to the U.S., two of whom the defense elected to have testify. In addition, we conducted a Rule 15 deposition with a fourth witness, whose testimony was presented at trial. So the idea that it was an insurmountable hurdle for the defense to present testimony from alibi witnesses that they knew existed at the time of trial, but were in Pakistan, is not consistent with the facts before your honors. I'd also note that with respect to the witnesses cited in the report, many of them provide little to no basis of knowledge for the conclusions they are being held out as representing, and specifically, as a point of interest, one of the quotes that the attorney relies on in his papers cites to Mohammad Afzal. Now, Mohammad Afzal is another defendant, excuse me, another brother of the defendant, but interestingly, he was in the United States at the time of the murder. We ultimately sought a material witness warrant for him, and he was held on GPS tracking device here in the Eastern District of New York through the pendency of trial. So the idea that he is being cited by the court as a person who represented the innocence of Akmal and Babar shows the level of scrutiny that would be required to truly assess the value of the testimony that those alibi witnesses purport to offer if they were called at trial. With respect to the cell site evidence, I think it's important to note that while it was presented to the government and to the court as an attachment to one of the motions, it consisted of three pages. It did not consist of a cover page. There's no subscriber information or anything of the kind to link the cell site evidence to Babar, whose alibi it purports to reinforce. And all we are left with is a summary of the report. This is just liliate. Does that need to be authenticated? Is that the point you're trying to make, or is it another point that you're making? Authenticated and confirmed... Authenticated in the sort of classic sense that we would require authentication of any phone records, but presuming that could even be met, it's not clear from the evidence presented that the phone is tied to Babar in any way, other than that the report from the Pakistani authorities states as much. But the records themselves that were provided are completely inadequate in establishing the same because they don't bear a subscriber name, there's no narrative or affidavit identifying how that telephone number and those three pages of excerpted records are tied to Babar or proof that he was in possession of that phone during the relevant time period. Interestingly, they also show, they also stop within an hour of the actual murder time, but presumably the argument could still be made that counsel intends to make up until that point, but it's a huge hurdle to connect that to Babar that is not satisfied here. So the idea that these three independent pages of cell site records, untied to any witness testimony or subscriber information, would have turned the verdict in this case, I think is not plausible. There's also the concern, and I'm happy to take questions, otherwise I'll keep speaking. Go ahead. There's also obviously the issue of cumulativeness. In addition to the, or as a result I should say, of the extensive efforts that the government and counsel made to afford the opportunity of these defense witnesses to testify, as one of your honors pointed out, there was an effective defense case here. It was a comprehensive defense case. It was ultimately rejected by the jury, but it contains testimony from three different witnesses, one of whom was an eyewitness by her own account, and it was, her testimony in particular, was directly contradictory of the government's two witnesses. So the idea that additional evidence, alibi evidence, that frankly I think the affidavit of trial counsel makes clear really needed to be scrutinized pretty heavily in order to have been admissible before the court, strategically admissible, I guess I'll say, before the court raises the issue that much of this would be cumulative at best and was already rejected by the trial jury. The last point I'll just make is with respect to Zamir. When we talk about whether or not these alibi witnesses could have churned the verdict, I think it's significant to focus on the fact that trial counsel felt it necessary not to call as a witness the only other victim in this case, the surviving victim, Zamir Amas, who was brought to the United States. A visa was obtained for him. The counsel ultimately, as clear from his affidavit, had concerns about the credibility of his account. It's clear from the record that he had originally reported while at the hospital the day of the incident that Akmal and Babar had been involved in the shooting. His proposed testimony at trial in defense of Mr. Chowdhury was going to be 180 degrees in the other direction. So all of this taken together, I think it's fair to say that the district court was not convinced that new evidence, either individually or in the aggregate, would have been likely to result in an acquittal. Given the strength of the evidence presented at trial and the fact that the evidence he now seeks to admit is largely cumulative of evidence already presented by the defense and rejected by the jury, the district court's decision to deny the motion was not only within the range of permissible outcomes, but was entirely reasonable and thoughtfully reached after consideration of the record. If there are no further questions, I'll leave the rest of my time on you. I just have one question. Defense counsel had raised this in the briefs tonight. I was thinking about it. I'm not sure it's dispositive, but the district court concluded that the defense lawyer lacked diligence in pursuing all these alibi witnesses. But defense counsel pointed out that in the ineffective assistance, the 2255 concluded that counsel was effective under the first Strickland prong. Is that inconsistent? How could you lack diligence in pursuing the witnesses but still be found to be effective under prong one? I would submit that he was effective because there's not an absence of record here on the defense case. He presented testimony that directly refuted, if credited by the jury, directly refuted the government's two eyewitness accounts offered by Simab and Rukhsana. And the issue, I think, is that the jury did not credit Ms. Connum's account and that they did credit Simab and Rukhsana or that they de-emphasized that part of the testimony and focused, as one of your honors pointed out earlier, on the very damning audio recordings of the defendant himself. So I think trial counsel was effective. I think he went to great lengths to present a defense case under very difficult circumstances. And the fact that he didn't put on every one of these witnesses does not render him ineffective. I think certainly there may be other reasons he declined to either, you know, felt like it was difficult to get additional witnesses to the United States or that he did not credit their accounts, which he had not been able to listen to himself. But I don't think that's the same as rendering him ineffective as trial counsel. Thank you. Mr. Treitel, you've got a few minutes for rebuttal. Thank you, Your Honor. So first, with respect to the CSLI, that was authenticated to the satisfaction of the court in Pakistan, and the report is only attributed to Babar and doesn't have any problem with the authenticity there. So I think that that's not really the issue here. Second is, with respect to the level of diligence, the government said it wasn't an insurmountable hurdle. That's not the standard. And also, the defense did do an investigation, did not find many of the people who are listed as newly discovered evidence. And just because there was an investigation, it didn't find it. It's almost as if the defense partially succeeds in finding people, they're then responsible for anyone who might exist who they didn't find. That's not the standard either. It's really an impossible standard. And that would, again, create a problem if you're partially successful in getting witnesses. That means that if you missed one or one was not around and you didn't know, then you're stuck with that. So I think that that's not the standard either. It would be unfair to impose it here. Also, if they investigated and found these witnesses, why wouldn't they bring them? The government makes a team in argument that they were all known and they weren't. Also, with respect to corroboration and cumulativeness, the defense is entitled to have corroboration of more than one witness, just as the government does. But the defense is not limited to the defendant's own statements on a recording that the government says are all incriminating anyway. And with respect to Zamir, and I think Judge Bianco, I'm not sure if it was Judge Bianco, but who asked a question about the ineffective assistant attorney, there is a whipsaw there for the defendant that's really unfair because one of our points was that he should have called Zamir and he told the jury he was going to call Zamir and he didn't call Zamir. And with these witnesses, if he did an investigation and didn't call them, then it is a whipsaw that's really unfair to the defendant. And with respect to Judge Loyer, as your adversary said, there may be explanations for that that are strategic in nature that doesn't necessarily convey a total lack of effectiveness as a lawyer. Right, but some of them were not people who declined to call, the trial counsel declined to call. Some of them were people who just were not known at the time. And so the purposes of this motion, those, I don't think, can be held against counsel who wasn't considered ineffective. And so, again, the standard would not require every potential witness to be discovered, particularly when the defense did do an investigation. And just lastly, Wes, is that with respect to the calls, again, with respect to materiality, Amna, who's on the calls with her father, is not telling the government, hey, there's real danger here. My father's serious. I don't think he's just bluffing. I don't think he's just going out of his mind because I've run away. There's real danger. Because these are being recorded in real time with the government, with her cooperating with the government. So that argument, I think, has been very powerful in front of the jury with all of this other evidence to create a reasonable doubt. Thank you, Your Honors. Thank you very much, Judge Bianco. Richard Park, any further questions? No, thank you. No, thanks. Thank you.